IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN TATUM | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-7577 |
| PHILADELPHIA HOUSING AUTHORITY, et al. | : | |

**MEMORANDUM RE: MOTIONS TO DISMISS**

**Baylson, J.**                                                                                          **May 26, 2011**

**I.      Introduction**

This lawsuit arises from the alleged retaliation against a former assistant manager at the Philadelphia Housing Authority ("PHA"), who was demoted and later fired after he complained about PHA officials' theft and fraud. Plaintiff John Tatum filed suit for violations of 42 U.S.C. §§ 1983, 1981,[1] the First Amendment, and the Fourteenth Amendment against PHA and PHA employees Carl Greene, Daniel Quimby, and Diane Rosenthal (collectively, "Defendants"). Defendants have filed Motions to Dismiss the Complaint for failure to state a claim. Following a careful review of the complaint and the motions to dismiss, and having heard oral argument on

---

[1] Plaintiff alleges that his lawsuit is pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Section 1981 provides a right to be free from racial discrimination for which Section 1983 is the exclusive federal remedy. McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (citing Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989)). The allegations in the Complaint, however, do not concern racial discrimination. In his Omnibus Response to the Motions to Dismiss, Plaintiff states that he intended to plead a claim pursuant to 42 U.S.C. § 1985 in lieu of 42 U.S.C. § 1981. Pl.'s Resp. 3 n.1. However, Plaintiff cannot amend his Complaint via his response brief. See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"). Therefore, the Court will not consider the parties' arguments regarding the purported Section 1985 claim.

the motions, the Court will grant the motions to dismiss with leave to amend.

## II. Factual and Procedural History

According to the Complaint (ECF No. 1), Plaintiff worked for PHA from 1982 until January 5, 2009. Compl. ¶ 8. In his highest-ranking position, Plaintiff was Assistant General Manager, Scattered Sites, supervising more than 400 PHA employees working in over 22,000 units. Compl. ¶ 4. Defendant Greene was the Executive Director of PHA from 1998 until 2010. Compl. ¶¶ 2, 10. Defendant Quimby is PHA's General Manager of Maintenance. Compl. ¶ 11. Defendant Rosenthal is PHA's Assistant Executive Director of Finance. Compl. ¶ 12.

At some unspecified time, Greene directed Plaintiff to instruct his workers to complete maintenance repairs on PHA units, known as "service orders," that required lead and asbestos remediation. Compl. ¶¶ 15, 21-22. Plaintiff refused because his workers were not qualified to perform work involving hazardous materials. Compl. ¶ 23. In 2007, Greene instructed staff not to enter service orders for pest control, which Plaintiff complained about at a Service Order Committee meeting with Quimby and Rosenthal. Compl. ¶¶ 25-27.

Greene issued Home Depot credit cards to certain PHA employees, including Plaintiff and Quimby, to purchase goods not in stock in PHA's warehouse. Compl. ¶ 31. Quimby asked Plaintiff to order materials from Home Depot. Compl. ¶ 32. Plaintiff refused to do so unless the request was in writing and identified the work and properties that required the material. Compl. ¶ 33. Quimby later took all the Home Depot credit cards and directed that all materials requests go through PHA employee Richard Perri. Compl. ¶ 33. In December 2007 or January 2008, Plaintiff suspected some employees who reported to Quimby were stealing. Compl. ¶ 34. Plaintiff told Quimby of his suspicion and left an anonymous message on the PHA's Inspector

2

General's tip line. Compl. ¶ 34. Plaintiff instructed his staff to make materials requests from him rather than Perri, and set up a spreadsheet to track orders. Compl. ¶ 35.

In July 2008, Philadelphia Police seized allegedly stolen PHA building materials, which were then stored in PHA Maintenance headquarters as evidence. Compl. ¶¶ 37-39. In December 2008, Quimby took Plaintiff to the headquarters and ordered Plaintiff to use the stored material in PHA units, which Plaintiff refused to do because the material was being held as evidence. Compl. ¶¶ 40-41.

One week later, Quimby instructed Plaintiff and three other PHA employees to attend a meeting regarding the thefts with attorneys, whom PHA hired at Greene's direction. Compl. ¶ 42. Plaintiff told the attorneys he had information and documents that implicated Quimby. Compl. ¶ 43. After the meeting, Plaintiff was isolated from his subordinates and demoted to Maintenance Superintendent of PHA's Blumberg Apartments. Compl. ¶ 44. While working at Blumberg, Plaintiff discovered allegedly stolen building materials. Compl. ¶ 45. Plaintiff told his supervisor about the material, which Quimby later removed. Compl. ¶ 46. On January 5, 2009, Quimby issued a Notice of Termination to Plaintiff, stating Plaintiff was suspended for ten days with intent to discharge due to failure to supervise. Compl. ¶ 47. Plaintiff believes he was terminated because he spoke out against the waste and theft. Compl. ¶ 48.

Plaintiff filed his Complaint on December 30, 2010. Count One, against Greene, Quimby, and Rosenthal in their individual capacities, alleges that Plaintiff engaged in protected speech by reporting and opposing wrongdoing at PHA, resulting in his termination. Count Two, against PHA, Greene, Quimby, and Rosenthal in their official capacities, alleges that PHA had a policy, practice, or custom of failing to properly sanction or discipline its officials for violations

3

of PHA employees' constitutional rights, including retaliating against employees who exercise their First Amendment rights.

PHA and Quimby filed a Motion to Dismiss and in the Alternative a Motion to Strike on March 4, 2011. (ECF No. 17) Rosenthal filed a Motion to Dismiss on March 4, 2011. (ECF No. 18) Greene filed a Motion to Dismiss on March 30, 2011. (ECF No. 27) Plaintiff filed an Omnibus Response to the PHA/Quimby and Rosenthal Motions (ECF No. 23), and separately responded to Greene's Motion (ECF No. 35). PHA and Quimby filed a reply brief (ECF No. 25), in which Rosenthal joined (ECF No. 30). Quimby also filed a motion for joinder in Greene's argument regarding qualified immunity. (ECF No. 40) The Court held oral argument on the motions on May 24, 2011.

### III. The Parties' Contentions

#### A. PHA and Quimby

Defendants PHA and Quimby contend that Plaintiff fails to state a First Amendment retaliation claim in Count One as a matter of law, because Plaintiff's alleged speech was made pursuant to his employment duties and was not protected under the First Amendment. Even if Plaintiff's speech was protected, Plaintiff did not allege a causal connection between the speech and the alleged retaliation. Defendants contend that Count Two of the Complaint fails to state a claim because Plaintiff makes legally conclusory allegations, in violation of <u>Twombly</u> and <u>Iqbal</u>, and because Plaintiff cannot establish a predicate First Amendment violation.

Alternatively, PHA and Quimby move to strike the "highly prejudicial" allegations in paragraphs 1-3, 15-21 and 25-30 because they include immaterial, impertinent, or scandalous matter pertaining to PHA funding, waste, Greene's sexual harassment settlement, and Greene's

compensation. These issues are unrelated to Plaintiff's claims.

B.      **Rosenthal**

Defendant Rosenthal incorporates the arguments in PHA and Quimby's Motion to Dismiss. Rosenthal argues that Plaintiff's Section 1983 claim must be dismissed pursuant to Supreme Court precedent, Garcetti v. Ceballos, 547 U.S. 310 (2006). Rosenthal further contends that the only factual allegation in the Complaint specifically concerning her is that Plaintiff objected to Greene's instruction not to complete service orders for pest control service orders at a meeting with superiors including Rosenthal. Compl. ¶ 27. She further argues that Plaintiff does not allege that his protected activity was a substantial factor in the retaliatory action. Lastly, Rosenthal contends that she has absolute immunity from Section 1983 liability for the Monell claims, and qualified immunity for any alleged constitutional violations.

C.      **Greene**

Defendant Greene also contends that the Complaint contains legally conclusory allegations in violation of Twombly and Iqbal. Greene asserts that Plaintiff does not identify any speech on which he bases his First Amendment claim against Greene, except a single refusal to comply with a direct order by Greene. Greene asserts that Plaintiff's speech was not protected by the First Amendment, and that even if it were, Plaintiff did not allege a causal connection between the speech and a retaliatory act. Plaintiff cannot assert a Monell claim against Greene in his official capacity. Lastly, if any claims do stand against Greene, they should be dismissed because Greene has qualified immunity.

D.      **Plaintiff**

Plaintiff contends that he sufficiently pled claims in both Counts against Defendants, and

that neither PHA nor its employees are entitled to Eleventh Amendment immunity. Plaintiff also asserts that it is premature to determine qualified immunity at the motion to dismiss stage, and that the individual Defendants are not protected by qualified immunity. With respect to the motion to strike, Plaintiff argues that Defendants have not shown any prejudice based on allegations in the Complaint.

## IV. Jurisdiction and Legal Standard

The Court has jurisdiction over Plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1331.

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). When the district court grants a motion to dismiss, it should grant leave to amend the complaint unless there is a justifying reason to deny leave, such as undue delay, bad faith, dilatory motive, prejudice, or futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). See Phillips, 515 F.3d at 233–34. Twombly established a three-pronged

6

approach for all civil actions: first, the court must identify the elements Plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief. Santiago v. Warminster Twp., 629 F.3d 121, 130 & n. 7 (3d Cir. 2010); see Iqbal, 129 S. Ct. at 1950, 1953. For the second step, the court should separate the factual and legal elements of the claims, must accept the well-pleaded facts as true, and may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

The undersigned, formerly a member of the Advisory Committee on Civil Rules, knows that many practitioners and judges share in the confusion resulting from Iqbal's seemingly strong requirement of factual pleadings in the absence of any specific overruling of prior cases allowing traditional notice pleading. The Court concludes that notice pleading is still the rule, because Rule 8 is still in effect, but that the concept of notice pleading has changed and must be accompanied by either factual or legal assertions satisfying the elements of the claims made. See Phillips, 515 F.3d at 234. In other words, "notice pleading" now requires "notice" of at least those facts necessary to raise an inference that the defendant has stated a counterclaim. See id. at 234–35 (concluding Rule 8 requires "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation").

Nevertheless, it is "true that judging the sufficiency of a pleading is a context-dependent exercise. Some claims require more factual explication than others to state a plausible claim for relief." W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010) (reversing

district court's application of heightened scrutiny in antitrust context) (citations omitted). Thus, pleading a civil rights claim may require fewer factual allegations than pleading an antitrust conspiracy or other complex business dispute. Cf id. (suggesting a claim for simple assault may require fewer factual allegations than a claim for an antitrust conspiracy).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists. Phillips, 515 F.3d at 234. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims, Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.'" Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).

## V. Discussion

Section 1983 provides a remedy for vindicating federal substantive rights. Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). The Court has recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). To allege a Section 1983 violation against multiple defendants, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.

Because Section 1983 is a "remedy for deprivations of rights established elsewhere in the Constitution or federal laws," "the initial question in a section 1983 action is whether the

plaintiff has alleged a deprivation of a constitutional right at all." Estate of Smith v. Marasco, 318 F.3d 497, 505-06 (3d Cir. 2003) (citations and internal quotation marks omitted). Here, Plaintiff alleges a constitutional deprivation of his First Amendment rights resulting in his termination from PHA.

The Third Circuit employs the following three-step burden-shifting analysis to a public employee's Section 1983 claim of retaliation for engaging in protected activity under the First Amendment:

> (1) the employee must demonstrate that his/her speech is protected, that is, it addresses a matter of public concern and the "employee's interest in the speech outweighs" the employer's countervailing interest "in promoting workplace efficiency and avoiding workplace disruption" (i.e., the balancing test established in Pickering v. Bd. of Educ., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed.2d 811 (1968)); (2) the employee must prove that his/her speech was "a substantial or motivating factor" in the retaliatory action against him/her, which, if proven; (3) shifts the burden to the employer to prove that the "allegedly retaliatory action would have been taken absent the protected [speech]."

Reilly v. City of Atlantic City, 532 F.3d 216, 224 (3d Cir. 2008) (citation omitted).

The governing Supreme Court case addressing whether a public employee's speech is protected under the First Amendment is Garcetti v. Ceballos, 547 U.S. 410 (2006). The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

In Garcetti, the plaintiff, Richard Ceballos, a deputy district attorney, investigated inaccuracies in an affidavit used to obtain a search warrant in a pending case, communicated his concerns to his supervisors regarding the matter, and wrote a memorandum recommending dismissal of the case. Garcetti, 547 U.S. at 413-14. Ceballos testified on behalf of the defense

9

regarding his concerns, and was demoted and transferred shortly after testifying. Id. at 414-15. Ceballos contended that his speech was constitutionally protected and the retaliation was unlawful. Id. at 415. The Supreme Court determined that Ceballos wrote the memorandum "pursuant to official responsibilities" and therefore had no claim for unconstitutional retaliation. Id. at 424.

Following Garcetti, he Third Circuit held that:

> [a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made.

Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting Garcetti, 547 U.S. at 418). The Court will consider the "content, form, and context of a given statement" to determine whether a government employee's expressive conduct involves a "matter of public concern." Connick, 461 U.S. at 147-48. The Third Circuit applied this test in Reilly, in which the plaintiff, a police officer, testified in court regarding a corruption investigation into a friend of the Director of Public Safety for Atlantic City. Reilly, 532 F.3d at 220. Following the trial, the Director recommended that Reilly be removed from the promotion list, suspended for ninety days and demoted, and permitted Reilly to retire before implementing these recommendations. Id. at 221-22. Reilly filed suit for retaliation against the city and his supervisors. The Third Circuit affirmed the district court's denial of summary judgment for the defendants on Reilly's First Amendment claim, finding that Reilly spoke pursuant to his duty as a private citizen to testify truthfully, and the speech regarded a matter of public concern. Id. at 228-31.

Plaintiff contends that the facts in Reilly are more analogous to the facts of his case than

10

those in Garcetti. However, all of the expressive conduct alleged in Plaintiff's Complaint was made in Plaintiff's official capacity as a high-level PHA employee, not as a private citizen. Plaintiff's speech concerned instructions and procedures for service orders,[2] materials requests,[3] and alleged theft of building materials.[4] This speech was pursuant to Plaintiff's supervisory responsibilities in his position as PHA's Assistant General Manager, Scattered Sites. With respect to the alleged theft of building materials at Blumberg, his speech was pursuant to his position as Maintenance Superintendent of that location. Moreover, Plaintiff met with PHA's attorneys in his capacity as a PHA employee rather than as a private citizen, as the attorneys were hired at Greene's direction and Quimby instructed Plaintiff to attend.[5] Additionally, Plaintiff cannot base a claim for retaliation on his anonymous call to the PHA Inspector General's tip line.[6] For these reasons, Plaintiff's Complaint is deficient under Garcetti because it fails to allege protected speech made in his capacity as a private citizen.

In addition to alleging that his speech was protected, Plaintiff must also allege the requisite causal connection between the speech and the retaliation by pleading "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," "(2) a pattern of antagonism coupled with timing to establish a causal link," or (3) an inference of causation from the "evidence gleaned from the record as a whole." Lauren W. ex

---

[2] Compl. ¶¶ 23, 27.

[3] Compl. ¶¶ 33, 35.

[4] Compl. ¶¶ 34, 40, 43, 45-46.

[5] Compl. ¶¶ 42-43.

[6] Compl. ¶ 34.

rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). Although the Court dismisses for failure to allege protected speech, Plaintiff should consider when amending his complaint whether he has stated sufficient facts to allege a causal connection between the protected speech and his termination as to each Defendant.

Lastly, the Court finds that Plaintiff has failed to allege facts to raise a plausible claim against Rosenthal. The only factual allegation that concerns Rosenthal is Plaintiff's complaint at a staff meeting about the service order procedures. As discussed above, this allegation is insufficient to state a claim because it concerns speech made pursuant to Plaintiff's duties as a PHA manager. The Complaint has no facts raising a facially plausible claim against Rosenthal for violating Plaintiff's First Amendment rights. Therefore, Plaintiff has not satisfied the pleading standards under Twombly and Iqbal as to his claims against Rosenthal.

## VI.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss. Plaintiff is granted leave to amend his Complaint in conformity with this Memorandum within thirty (30) days. An appropriate Order follows.

O:\CIVIL 09-10\10-7577 Tatum v PHA\Tatum v. PHA - MTD memo.wpd